IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| MICHAEL B. LOWE; and ALICIA LOWE, | |
| Plaintiffs, | CIVIL ACTION NO.: 4:25-cv-171 |
| v. | |
| DAVID J. PRICE; BUILDING MATERIALS MANUFACTURING CORPORATION; and GAF MATERIALS, LLC, | |
| Defendants. | |

**O R D E R**

Before the Court is Plaintiffs Michael B. Lowe and Alicia Lowe's Motion to Remand. (Doc. 23.) Plaintiffs filed this action in the State Court of Chatham County against Defendants David J. Price, Building Materials Manufacturing Corporation ("BMMC"), and GAF Materials, LLC ("GAF"). (See doc. 1-1.) Plaintiffs assert claims for negligence and premises liability and seek compensatory damages. (Id. at pp. 7–8.) Defendants removed the case to this Court, (doc. 1), and Plaintiffs filed the at-issue Motion to Remand, (doc. 23). For the reasons below, the Court **GRANTS** Plaintiffs' request for remand. (Id.)

**BACKGROUND**

According to the Complaint, Defendants BMMC and/or GAF owned, operated, and controlled a physical plant and business operations center in Chatham County, Georgia (the "Plant"). (Doc. 1-1 at p. 3.) Defendant Price was the manager in charge of the Plant at all relevant times. (Id. at pp. 3–4.) On September 28, 2024, Plaintiff Michael B. Lowe was performing a

contract job on the Plant property as a third-party outside worker. (Id. at p. 4.) While performing the requested work on a roof at the Plant, he suddenly fell through the roof and landed more than 20 feet below, sustaining unspecified severe and permanent injuries as a result. (Id. at pp. 4, 6.)

On June 12, 2025, Plaintiffs, who are married and are Georgia residents, sued Defendants in Chatham County State Court. (See generally id.) Plaintiffs bring negligence and premises liability claims against GAF, BMMC, and the Plant manager, Price, alleging that Michael B. Lowe's injuries resulted from Defendants' failure to maintain a safe working environment. (Id. at pp. 3, 6.) Plaintiffs seek damages for Plaintiff Michael B. Lowe's injuries, lost wages, and medical expenses, and Plaintiff Alicia Lowe's loss of consortium. (Id. at pp. 7–8.)

Defendants GAF and BMMC are foreign corporations and Defendant Price is a Georgia resident. (Id. at pp. 2–3.) Defendants removed this action to this Court pursuant to 28 U.S.C. § 1441, arguing that complete diversity exists between Plaintiffs and all Defendants except Defendant Price, who Defendants contend was fraudulently joined to prevent removal. (Doc. 1, p. 3.) Plaintiffs then filed the at-issue Motion to Remand, arguing, among other things, (1) that the Court lacks subject matter jurisdiction because Defendant Price is not diverse, and (2) that Defendants GAF and BMMC failed to prove that Defendant Price was fraudulently joined. (See doc. 23.) The Motion has been fully briefed. (Id.; docs. 26 & 29.)

## LEGAL STANDARD

Actions initially filed in a state court may be removed to federal court in two circumstances: (1) where the claim presents a federal question or (2) where diversity jurisdiction exists. 28 U.S.C. § 1441(a–b). Federal courts, as courts of limited jurisdiction, must remand a case removed on diversity grounds where there is not complete diversity of citizenship between the parties or where

one of the named defendants is a citizen of the state in which the suit is filed. 28 U.S.C. § 1441(b). In this circuit, "there is a presumption *against* the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand." Russell Corp. v. Am. Home Assurance Co., 264 F.3d 1040, 1050 (11th Cir. 2001) (emphasis added), *abrogated on other grounds by* Overlook Gardens Props., LLC v. ORIX USA, L.P., 927 F.3d 1194, 1202 (11th Cir. 2019).

Even so, courts may retain jurisdiction and "ignore the presence of [a] non-diverse defendant" when the plaintiff fraudulently joined that defendant solely to defeat federal diversity jurisdiction. Stillwell v. Allstate Ins. Co., 663 F.3d 1329, 1332 (11th Cir. 2011).

> To establish fraudulent joinder, "the removing party has the burden of proving by clear and convincing evidence that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court."

Id. (quoting Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997)) (alterations omitted).

When ruling on a motion to remand, "the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff." Crowe, 113 F.3d at 1538. "The federal court makes these determinations based on the plaintiff's pleadings at the time of removal; but the court may consider affidavits and deposition transcripts submitted by the parties." Id. In making this determination, "federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." Id. Indeed, "[i]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." Coker v.

3

Amoco Oil Co., 709 F.2d 1433, 1440–41 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Georgetown Manor, Inc. v. Ethan Allen, Inc., 991 F.2d 1533 (11th Cir. 1993); see also Stillwell, 663 F.3d at 1334–35 (finding that the district court erred in concluding the defendant was fraudulently joined because "at the very least, [it is] possible that a Georgia state court would conclude that" the plaintiff's complaint stated a cause of action under Georgia's notice pleading standards).

The burden of establishing fraudulent joinder "is a heavy one," and such a claim must be supported by clear and convincing evidence. Stillwell, 663 F.3d at 1332 (internal quotations omitted). In addressing a fraudulent joinder claim, "this Court 'must necessarily look to the pleading standards applicable in state court, not the plausibility pleading standards prevailing in federal court.'" McKenzie v. King Am. Finishing, Inc., No. 6:12-cv-065, 2012 WL 5473498, at *3 (S.D. Ga. Nov. 9, 2012) (quoting Stillwell, 663 F.3d at 1334). Unlike the federal pleading standard, Georgia simply requires notice pleading. See O.C.G.A. § 9–11–8(e). Thus, "it is immaterial whether a pleading states conclusions or facts as long as fair notice is given, and the statement of claim is short and plain. The true test is whether the pleading gives fair notice . . . ." Carley v. Lewis, 472 S.E.2d 109, 110–11 (Ga. Ct. App. 1996).

## DISCUSSION

Defendants concede that both Plaintiffs and Defendant Price are citizens of Georgia. (See doc. 1, p. 3; doc. 26, p. 5.) Thus, unless Defendants can prove by clear and convincing evidence that Price was fraudulently joined, the case must be remanded for lack of subject matter jurisdiction due to the lack of complete diversity among the Parties. Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373 (1978) ("[D]iversity jurisdiction does not exist unless *each* defendant is a citizen

of a different State from *each* plaintiff." (emphasis in original)).  Accordingly, the Court must determine whether there is a "possibility that a state court would find that the Complaint states a cause of action against" Price.  Coker, 709 F.2d at 1440.

Plaintiffs allege negligence based on the doctrine of premises liability.  (See doc. 1-1.)  In Georgia, "[w]here an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe." O.C.G.A. § 51-3-1.  Thus, to owe a duty under this statute, Price must qualify as "an owner or occupier of land." Id.  "To determine whether a person was an owner or occupier subject to liability under O.C.G.A. § 51-3-1, the critical question is whether the individual exercised sufficient control over the subject premises at the time of injury to justify the imposition of liability." Poll v. Deli Mgmt., Inc., No. 1:07-cv-0959, 2007 WL 2460769, at *4 (N.D. Ga. Aug. 24, 2007) (citing Scheer v. Cliatt, 212 S.E.2d 29, 31 (Ga. Ct. App. 1975)).

Plaintiffs allege that Price was the manager in charge of the Plant and had a non-delegable duty to keep its premises safe for invitees.  (Doc. 1-1, pp. 3–7.)  While Defendants concede that Price was the Plant manager, they state that he was not present at the Plant at the time that Michael B. Lowe fell and deny that Price owed duties to the Plaintiffs, thus insisting there is no basis for holding him liable.  (Doc. 26, pp. 2–3.)  Defendants argue that as a manager, Price was not an "owner or occupier" under O.C.G.A. § 51-3-1 as he lacked sufficient control over the Plant to be liable under O.C.G.A. § 51-3-1.  (Id. at p. 1.)

I.   **Whether Price had "Sufficient Control" Over the Plant to be Liable Under O.C.G.A. § 51-3-1**

In support of their argument that Price lacked sufficient control over the Plant on the day of Michael B. Lowe's fall, Defendants submitted the Declaration of Defendant Price. (Doc. 26-1.) In his Declaration, Price asserts that he does not have any ownership interest in BMMC, GAF, or the Plant, and at the time of Mr. Lowe's fall he was neither scheduled to work nor present at the Plant. (Id. at p. 3.) He states that he did not design or construct the roof area where Mr. Lowe fell, he has not directed inspections of the roof area where he fell, he was not involved in creating roof access policies or roof safety procedures, he did not approve of any roof access permits which Mr. Lowe may have used, and he did not supervise Mr. Lowe because Mr. Lowe was employed by an independent contractor hired to repair roof damage at the Plant. (Id.)

Defendant Price, however, does not provide evidence of his job duties and responsibilities as the manager of the Plant. Price does state that he arrived at the Plant on the date of Mr. Lowe's fall after Mr. Lowe had been transported to the hospital. (Id.) Plaintiffs argue that, "presumably, this is because, in Defendant Price's role as the 'highest ranking member of management,' he was needed to come in and investigate Mr. Lowe's fall." (Doc. 29, p. 2.) Plaintiffs thus contend that "even in his absence, Defendant Price maintained supervisory control of the [Plant] at the time of Mr. Lowe's fall." (Id.) Plaintiffs attach an Affidavit of Nathan Goebel, "an expert in the area of the heavy manufacturing industry with over 10 years [of] experience as a plant manager of a plant similar to the [Plant]," who outlines, based on his "education, training, and experience as a plant manager," Price's "supervisory control" of the Plant at the time of Mr. Lowe's fall. (Doc. 23, p. 6; doc. 23-2, p. 2.). Mr. Goebel concludes that Price violated his "duties and responsibilities" for several reasons. (Doc. 23, p. 7; doc. 23-2, pp. 4–5.) Price, however, states in his Declaration that

6

he has "never met or communicated with Mr. Goebel," and that "his assertions are incorrect." (Doc. 26-1, p. 4.)

In the present posture of this case, the Court cannot resolve the factual disputes underpinning the legal determination of Price's liability as manager under O.C.G.A. § 51-3-1: specifically, the nature of Price's supervisory responsibilities in maintaining the Plant at the time of Mr. Lowe's injury. See Poll, 2007 WL 2460769, at *6. Neither Price nor Goebel's testimony about Price's "control" over the Plant carry the day because whether Price had "personal charge of or exercise[d] the right of management or control over" the Plant is a question of fact which requires the consideration of a variety of factors. Westmoreland v. Williams, 665 S.E.2d 30, 32 (Ga. Ct. App. 2008); Scheer, 212 S.E.2d at 30–31. Indeed, the fact that Price held the title of "Plant manager" and the fact that he arrived at the Plant on the day Mr. Lowe fell after Mr. Lowe had been transported to the hospital combined with Goebel's testimony provide at least some evidence that he managed or supervised something at the Plant at the time of Mr. Lowe's injury.

## II. Whether Price, as the Plant Manager, is an "Owner or Occupier" Within the Meaning of O.C.G.A. § 51-3-1

Defendants argue that Georgia law does not allow premises liability recovery against managerial employees, relying primarily on Anderson v. Atlanta Comm. for Olympic Games, 537 S.E.2d 345 (Ga. 2000) and Adams v. Sears, Roebuck & Co., 490 S.E.2d 150 (Ga. Ct. App. 1997). (Doc. 26, pp. 6–10.) But there is at least some authority under Georgia law that permits premises liability to be imposed on a manager even if he does not have any ownership or controlling interest in the property or the business. In Ishmael v. Gen. Growth Props., this Court was presented with a fraudulent joinder argument by defendants who claimed that their co-defendant shopping mall manager (whose presence defeated diversity jurisdiction) could not be held liable under O.C.G.A.

§ 51-3-1 because he was not an "owner or occupier." No. CV 114-175, 2014 WL 7392516, at *2 n.2 (S.D. Ga., Dec. 29, 2014). The Court described "the apparent inconsistency in the interpretation of § 51-3-1 by Georgia courts," specifically that "some Georgia cases 'have suggested that the control required for premises liability is restricted to legal control over the property in the form of an ownership or other possessory interest,'" while "[o]ther Georgia courts have recognized that liability may be established under the statute 'where the individual had supervisory control over the subject premises at the time of injury.'" Id. at *3 (quoting Poll, 2007 WL 2460769, at *4); see also Jones v. Family Dollar Stores of Georgia, LLC, No. 5:23-CV-453 (CAR), 2024 WL 4491817, at *2 (M.D. Ga. Oct. 15, 2024) ("Although some Georgia District Courts have concluded that a manager or assistant manager cannot be an 'owner or occupier' under O.C.G.A. § 51-3-1, many others . . . have routinely come to the opposite conclusion." (internal citations and quotations omitted)). The Court noted, however, that, "[c]onsistent with the latter view, 'most courts agree that exhibiting some level of supervisory control will be sufficient to include a store manager within the § 51-3-1 definition of owner or occupier.'" Ishmael, 2014 WL 7392516, at *3 (quoting Ott v. Wal–Mart Stores, Inc., No. 5:09-cv-215, 2010 WL 582576, at *2 (M. D. Ga. Feb. 16, 2010) (alterations and internal quotations omitted)). After listing cases where Georgia courts have interpreted the meaning of "owner or occupier" to include those with something less than a legal possessory interest, the Court determined that "[t]hese cases demonstrate that a manager may, 'under certain circumstances and with sufficient supervisory authority,' be held liable under § 51-3-1." Id. (quoting Poll, 2007 WL 2460769, at *5).

The Court acknowledged the existence of limited case law holding that a manager cannot be held liable under Section 51-3-1, including Adams, 490 S.E.2d 150, but explained that, in the

years since those decisions were issued, "the weight of authority in federal courts of this state has shifted and now dictates a contrary result." Ishmael, 2014 WL 7392516, at *4 (reciting multiple orders issued by various district courts in Georgia holding that there is at least a possibility that a manager could be held liable despite not being an "owner or occupier" of the premises); see also Otey v. AMC Entertainment Holdings, Inc., No. 1:24-CV-00184-TWT, 2024 WL 1468342, at *4 (N.D. Ga. Apr. 4, 2024) (same). As a result, the Court held that the defendants had "failed to carry their heavy burden of establishing fraudulent joinder as there [was] at least some possibility that [p]laintiff state[d] a cause of action against [the store manager defendant]." Ishmael, 2014 WL 7392516, at *4; see also Martin v. Winters Chapel 592, LLC, No. 1:24-CV-3105-TWT, 2025 WL 242538, at *4 (N.D. Ga. Jan. 17, 2025) (noting that cases that have considered whether managers can be liable under O.C.G.A. § 51-3-1 have found that liability under the statute may extend to non-owners with sufficient supervisory control and finding that plaintiffs stated a possible claim against the manager-defendant); Otey, 2024 WL 1468342, at *3–4 (concluding that defendants did not meet their heavy burden for showing that the manager-defendant was fraudulently joined because "[t]he Court agrees with the great majority of cases" that recognize that a certain level of supervisory control can create liability under O.C.G.A. § 51-3-1).

However, as this Court stated in Alexander v. Wal-Mart Stores East, LP, such instances when Georgia courts have found managers may be liable under Section 51-3-1, "do not answer whether personal liability may be imposed on a manager who was not present and asserts that in his absence he does not exercise control over the store." No. CV 623-036, 2024 WL 695413, at *3 (S.D. Ga. Feb. 20, 2024). The Court noted that there is a split among federal courts who have faced the same issue, and determined that because of the split, the Court had no guiding authority

on the absent manager's potential liability. Id. (citing Glenn v. Wal-Mart Stores E., LP, No. 1:18-CV-1119, 2018 WL 11444732, *2–3 (N.D. Ga. May 25, 2018) (finding fraudulent joinder and denying remand when the only nondiverse party was a store manager who was undisputedly absent from the store on the day of the incident and lacked ownership interest in the premises); Newman v. Wal-Mart Stores E., L.P., No. 7:15-CV-165, 2015 WL 7258497, *3–5 (M.D. Ga. Nov. 17, 2015) (finding fraudulent joinder and denying remand when manager was undisputedly not on duty on the day plaintiff was injured); Hambrick v. Wal-Mart Stores E., LP, No. 4:14-CV-66, 2014 WL 1921341, *3–4 (M.D. Ga. May 14, 2014) (finding defendants did not carry burden to show the non-diverse defendants, including a manager who was not on duty the day of the accident, were fraudulently joined because under the record viewed in the light most favorable to plaintiff, Georgia law did not conclusively preclude a cause of action)).

As the Court explained in Alexander, Georgia courts have not conclusively held that a plaintiff cannot assert a premises liability claim against a manager merely because the manager was not present and claims he was not exercising control over the premises at the time the plaintiff was injured. Id. at *4. Additionally, as explained in Alexander, given the procedural posture, those uncertainties must be resolved in Plaintiffs' favor. Id.

## CONCLUSION

While "some uncertainty exists as to whether a [manager] . . . may be held liable as either an 'owner or occupier' under O.C.G.A. § 51-3-1, or as an agent of an 'owner or occupier' under traditional agency principles," and as to whether personal liability may be imposed on a manager who was not present at the time of the injury, those uncertainties favor remand here. Poll, 2007 WL 2460769, at *5; see also Alexander, 2024 WL 695413, at * 3–4. Price's liability may hinge

on the degree of control he exercised.  The Court cannot resolve that at this early stage in litigation because Plaintiffs need "only have a possibility of stating a valid cause of action in order for the joinder to be legitimate."  Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998).  Considering the presumption for remand and the requirement that all facts be construed in favor of Plaintiffs, Defendants have failed to carry their heavy burden of establishing fraudulent joinder because there is at least some possibility that Plaintiffs state a cause of action against Defendant Price.  See id.

For these reasons, the Court **GRANTS** Plaintiffs' Motion to Remand, (doc. 23).  The Court **DIRECTS** the Clerk of Court to **REMAND** this case to the State Court of Chatham County, Georgia, and **CLOSE** this case.

**SO ORDERED**, this 1st day of December, 2025.

R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA